Florence Wade, on her own behalf and behalf of her minor child, brought this suit against Claude Gennaro, for damages for the unlawful killing of her late husband, Benjamin Wade, on the 21st day of May, 1939, at about 6:00 a.m. She claims $7,700 for herself and $5,000 for her child, or a total of $12,700.
Gennaro admitted the killing, but claimed that he was justified because he acted in self-defense.
There was judgment below in defendant's favor dismissing plaintiff's suit and she has appealed.
Claude Gennaro is the proprietor of a negro barroom, restaurant and dance hall, located on the corner of Felicity and S. Rampart Streets, in the City of New Orleans. The evidence shows that on Saturday night, May 20, 1939, Wade came into Gennaro's place of business several times in company with other negroes and, at about 5:30 a.m., Sunday morning, began cursing and abusing Gennaro, who ordered him out of the place. One of the negroes, it is not certain whether it was Wade or not, threatened to return and "get" Gennaro. At about 6:10 a.m. the three negroes came back, it is doubtful whether all of them entered the saloon or only one, but the negroes began to throw bricks and other missiles at Gennaro, destroying whiskey bottles and other property, whereupon Gennaro secured a pistol which was in a drawer behind the bar and shot and killed Wade. It is claimed that the shot entered at the back of Wade's neck. This fact is not definitely established, but it is made to appear probable. Counsel makes much of this circumstance as indicating the unprovoked nature of defendant's attack. There is also some doubt as to where the body of Wade was found after the shooting, one witness testifying that it was about one hundred and fifty feet away from the front door of defendant's place *Page 562 
of business, while Gennaro says he fired on deceased while he was in the act of throwing the brick at him and when about eighteen feet away and just as he reached the door of his barroom.
There is no doubt in our minds that the deceased, Benjamin Wade, was the aggressor. He was drunk and quarrelsome. The defendant's barroom, as testified to by the police officers who reached there after the killing, gave evidence of the destruction wrought by the bricks thrown by Wade and his companions. If he was shot in the back of the neck, it does not necessarily follow that he was running away at the time, for if, as Gennaro asserts and he is corroborated by one of the witnesses, Wade was shot while in the act of throwing a brick at Gennaro, it might well be that his body was so turned that the back of his neck was exposed to Gennaro's pistol, without his having been in flight.
The law on the subject is, as pointed out by us in our opinion in the case of Randall v. Ridgley, La.App., 185 So. 632, that "one who is himself in fault cannot recover damages for a wrong resulting from such fault, although the party inflicting the injury was not justified under the law. Vernon v. Bankston, 28 La.Ann. 710; Johns v. Brinker, 30 La.Ann. 241; Bankston v. Folks, 38 La.Ann. 267; Miller v. Meche, 111 La. 143, 35 So. 491; Massett v. Keff, 116 La. 1107, 41 So. 330".
Counsel for plaintiff recognizes the effect of these authorities, but contends that the present case is one which is controlled by the principle that "a person defending himself from an attack becomes liable as an aggressor where the force employed is in excess of that which the law will tolerate in a given case for defensive purposes, and for the use of such excessive force he is liable both civilly and criminally". American Jurisprudence, Vol. 4, verbo "Assault and Battery", Section 51, p. 153.
In the Randall case we reached the conclusion that the latter principle of law applied and held the defendant liable in damages for the shooting and wounding of a quarrelsome negro, but no assault had been made by the negro nor "was there anything to indicate that Ridgley [the defendant] was in any danger of bodily harm". In the case at bar the defendant's place of business was under attack by several negroes, who were throwing bricks and other missiles dangerous to life and limb and destructive of defendant's place of business. He was not obliged to witness the destruction of his property without attempting to prevent it, to say nothing of the danger to himself which the flying bricks hurled by the inebriated negroes created.
In our opinion the defendant was justified in killing the deceased negro, who seemed to be determined upon having his drunken whims satisfied at any hazard to the life and property of the defendant.
The judgment appealed from is, in our opinion, correct, consequently, and for the reasons assigned, it is affirmed.
Affirmed.
SIMON, J., absent.