74 So.2d 408 (1954)
ROBERTSON
v.
PALMER et al.
No. 3854.
Court of Appeal of Louisiana, First Circuit.
June 29, 1954.
Application for Rehearing Dismissed September 15, 1954.
*409 Eugene Stanley, New Orleans, for appellant.
Richard H. Kilbourne, Clinton, Durrett & Hardin, Baton Rouge, Woodrow W. Overton, Clinton, for appellees.
LOTTINGER, Judge.
This matter was previously before us on an appeal from a judgment of the lower court sustaining exceptions of no cause and no right of action filed by two of the defendants, Sheriff Nehemiah Livingston Palmer and National Surety Corporation. See 55 So.2d 68. Following our decree, which reversed the lower court, all defendants filed answers and the case was tried on its merits. The matter is now before us again on an appeal taken by the plaintiff from a judgment in favor of all of the defendants.
The pertinent parts of the petition have been set out in our prior opinion. The answer of the defendant George Freeman presents a completely contrary version of how the incident occurred. He sets out that the decedent, Wilbert Robertson, cursed and abused him to the extent that he attempted to strike Robertson with his night stick whereupon the latter grabbed the night stick and began beating him. Freeman then avers that as a result of being beaten by Robertson he was put in fear of his life and thus drew his pistol and shot him. He pleads that his actions were justified, that he was in fear of his life or great bodily harm and was acting in self-defense.
Sheriff Palmer and National Surety Corporation filed a separate answer which denied generally the allegations of the plaintiff's petition and averred that the acts of Freeman were not done while he was in the performance of an official act. Alternatively, it was alleged that Freeman was provoked by Robertson and that after attempting to strike him, Robertson took the stick from him and struck him several times which justified Freeman in reaching for his pistol and shooting him. This alternative plea sets up in effect that had Robertson lived, he would have had no right of action against the defendants and that, therefore, his widow and children have no right of action either.
The trial in the Court below lasted three days. Some sixteen witnesses were called and the transcript of their testimony totals some 284 pages. Several "eyewitnesses" testified for both sides and presented two completely different versions of the incident. That related by plaintiff's witnesses is substantially as follows:
During the evening, just after dark on July 4, 1949, an automobile accident occurred near the town of Clinton and George Freeman, a deputy sheriff, was called to investigate same. He came to a place of business known as Cheek's place and, while standing in the parking area in the front of Cheek's, sent for one of the drivers of the automobiles involved. During his investigation and while attempting to locate the driver he told a large crowd of colored people who were grouped around to stand back. Subsequently, the decedent (who was referred to by many of the witnesses as "T-Mac") appeared on the scene en route *410 to go to work at Mr. Cheek's. When he appeared Freeman made some remark to the effect that he had told everyone to stand back whereupon "T-Mac" replied, "O.K. Boss," and turned to leave. The use of the term "O.K." infuriated Freeman, who said, "Don't O.K. me!", pulled his night stick and started beating "T-Mac". The decedent immediately retreated with his hands over his head a distance estimated from 18 to 27 feet with Freeman continuing to beat him with the night stick. Finally, as "T-Mac" was falling to the ground, Freeman pulled his pistol and shot twice. The first bullet evidently missed but the second struck the decedent causing his death which came about several days later.
The defendant Freeman's version is that on the night of July 4, 1949, he was called to investigate an automobile accident in front of Cheek's place situated on Louisiana Highway No. 36 and that when he arrived on the scene, there was a large number of colored people standing about outside the place. He asked that the driver of one of the vehicles involved, a taxicab driven by a colored man, be called from inside Cheek's place, and be brought outside. As he attempted to determine the damage to the vehicles there was a large number of people crowding around him and he asked that they all step back. While most of them complied, the decedent came walking up to Freeman. The latter asked if he had not heard him tell everyone to step back, whereupon Robertson replied that he did not have to step back. He began to curse and abuse Freeman causing Freeman to reach for his night stick and strike at him. Robertson grabbed the stick, pulled it free and began striking Freeman. After having been struck two or three times, Freeman pulled out his pistol and shot Robertson. Freeman was in fear of his life or great bodily harm when he pulled his pistol and shot.
The two versions of the incident are, of course, irreconcilable. The evidence does make it clear, however, that Freeman was not under the influence of liquor, as alleged in the petition. There is absolutely no evidence which would tend to show him to have been drunk and the record contains the testimony of several witnesses who positively stated that he had not been drinking and was not drunk at the time. The testimony of Freeman is corroborated by several witnesses. Miss Virginia Quave, a nurse at the hospital in Clinton where Robertson was brought, stated that Freeman was at that time suffering from a fresh bruise on his left breast. In addition to this there was introduced into evidence the broken metal fountain pen which Freeman testified that he was wearing in his left pocket that night and which was broken by the blow by Robertson.
It is well established, as the jurisprudence of this state, that a plaintiff cannot recover civil damages if it is shown that such plaintiff has been at fault in provoking the difficulty in which the injury is received. Where a plaintiff provokes a difficulty by insults, abuse, threats, or other conduct calculated to arouse resentment or fear on the part of the defendant, the plaintiff cannot recover although the defendant may not have been justified in law in his conduct. See Massett v. Keff, 116 La. 1107, 41 So. 330; Miller v. Meche, 111 La. 143, 35 So. 491; Welch v. Van Valkenburgh, La.App., 189 So. 297; Ponthieu v. Coco, La. App., 18 So.2d 351; McCurdy v. City Cab Co., La.App., 32 So.2d 720; Smith v. Clemmons, La.App., 48 So.2d 813.
The question to be resolved as this appeal is purely factual, i.e., which version of the incident is correct. The trial Judge concluded that the defendant Freeman's version was true and that the deceased had provoked the difficulty, and we fail to find anything in the record which would show his findings to be incorrect. This is another of those many cases where we are constrained to affirm the factual findings of the trial judge who saw and heard the witnesses and who was in a better position to judge their credibility than are we.
In this connection we might point out that even if the force exerted by Freeman *411 was unjustified from a criminal standpoint that he would not necessarily be liable civilly. See Britt v. Merritt, La.App., 45 So.2d 902.
Finding no manifest error in the judgment appealed from the same is hereby affirmed.
Judgment affirmed.
PER CURIAM.
In this case an application for rehearing was timely filed in this Court by plaintiffs-appellants. Opponents have filed a motion to dismiss this application upon the ground that it is insufficient as it does not comply with the provisions of the rules of this Court and with the Code of Practice.
The application itself contains nothing more than the usual preamble and prayer, the body thereof reading as follows:
"That the opinion, judgment and decree rendered by this Honorable Court herein on the 29th day of June, 1954, is erroneous and contrary to the law and the evidence and prejudicial to the interests of petitioners, and that a rehearing should be granted herein."
Article 912 of the Louisiana Code of Practice provides:
"Petition for rehearing.In the interval between the day on which the judgment is rendered and that on which it becomes final, a party dissatisfied with the judgment may apply to the court for a new hearing in the cause, and for this purpose shall present a petition, in which he shall state substantially the reasons for which he thinks the judgment erroneous, and shall cite the authorities in support of his opinion."
The Rules of this Court, pertinent here, Vol. 8, West's L.S.A. Revised Statutes, page 661, read:
"Applications for rehearings must be filed within the legal delay and in the manner required by law."
The phrase, "in the manner required by law", found in the cited Rule, must necessarily refer to Article 912 of the Code of Practice, which provides such an application shall state substantially the reasons upon which the applicant bases his conclusion the judgment is erroneous, and contain the citation of authorities in support thereof.
The application herein contains merely a conclusion of the pleader that the decree rendered by this Court is erroneous and contrary to the law. Nowhere is set forth the facts upon which the conclusion is based, nor is any authority whatsoever given.
In Walker v. Mills Engineering Const. Co., La.App., 153 So. 344, this Court refused to consider a similar application for rehearing since it was purely formal and did not point out specifically any error in the opinion and judgment handed down in that case.
The Supreme Court considered a similar question in Lacroix v. Camors, 34 La.Ann. 639, in which a petition for rehearing stated that the grounds would be set forth in a printed brief to be filed. When this petition was filed an order permitting the filing of the brief was inadvertently signed and the brief was later filed, setting forth the grounds upon which the application had been based. The majority of the Court held the petition did not constitute an application within the purview of the Supreme Court Rules and the Code of Practice. See also Brown v. Stroud, 34 La.Ann. 374.
In Armbruster v. Behan, 3 Orleans App. 229, a petition for rehearing was not entertained by the Court since it did not set forth the grounds upon which the complainant contended the judgment was erroneous. In this case the Court made an observation that although appellate courts have at times considered petitions where they were not drawn in compliance with the mandatory requirements of the law, and the adverse party made no objection, yet the law must be enforced in those instances where the Court is asked to reject the application.
We recognize the Rules of the Court of Appeal of Louisiana, Second Circuit, particularly *412 Rule 9 thereof, which has to do with rehearings, is different from our pertinent Rule. However, this difference has no bearing here, but its fact is mentioned since a similar case arose in the Second Circuit, and the Supreme Court of Louisiana passed and commented upon this difference in Cox v. Shreveport Packing Co., 212 La. 325, 31 So.2d 815.
In accord with the authorities, hereinabove, that is, because no reasons are set forth in the application, we are of the opinion that the document filed herein applying for a rehearing cannot be considered as one that is contemplated by our Rule and within the purview of Article 912 of the Code of Practice.
Application dismissed.