168 So.2d 400 (1964)
Johnny L. RIVERS, Plaintiff and Appellee,
v.
L. T. BROWN et al., Defendants and Appellants.
No. 1241.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1964.
Rehearing Denied November 18, 1964.
Writ Refused January 18, 1965.
Joseph R. Bethard, Shreveport, for defendants-appellants.
John P. Godfrey, Many, Lowe & Benton, by John B. Benton, Jr., Minden, for plaintiff-appellee.
*401 Before CULPEPPER, SAVOY and HOOD, JJ.
CULPEPPER, Judge.
This is a suit for damages resulting from an assault and battery. Plaintiff alleges he was pistol whipped and kicked by the defendant, L. T. Brown, who was acting as an agent or employee of the defendant, L. T. Brown Contractor, Inc. Defendant, The Travelers Insurance Company, is the liability insurer of L. T. Brown Contractor, Inc. The district judge rendered judgment for plaintiff in the total sum of $3,686. Defendants appealed. Plaintiff answered the appeal praying for an increase in the award.
The first issue is a coverage defense urged by The Travelers Insurance Company. Relevant to this issue is a provision in Insurance Agreement I, Coverage A, of the policy that the insurer agrees "to pay on behalf of the insured all sums which the insured shall become legally" "obligated to pay as damages because of bodily injury * * * sustained by any person and caused by accident." (Emphasis added.) Also, the provisions under paragraph 3(h), which gives definitions, states: "assault and battery shall be deemed an accident unless committed by or at the direction of the insured." (Emphasis added.)
The defendant insurer argues that since L. T. Brown was the president, principal stockholder and superintendent of construction for L. T. Brown Contractor, Inc., any assault and battery committed by Brown was of necessity committed "by or at the direction of the insured'", L. T. Brown Contractor, Inc., and therefore was excluded under the above quoted policy provisions.
Only one Louisiana case has been cited dealing with the question of whether the word "insured" contained in the quoted exclusionary provision refers both to the named insured and an omnibus insured such as L. T. Brown in this case. In Barringer v. Employer's Mutual Liability Insurance Co. (2nd Cir.App.1952) 62 So.2d 173, the named insured was the owner of a taxicab. His employee driver committed assault and battery on a passenger. The exclusionary clause regarding assault and battery was identical to that in the present case. The court held as follows:
"Defendant contends that though the policy expressly provides "assault and battery shall be deemed an accident unless committed by or at the direction of the insured' the definition of `insured' contained in the policy includes the operator of the vehicle, namely an employee, such as Sims in this instance, with the result the operator as well as the insured comes within the exclusion. We reason as did the judge a quo that the clause is in the nature of an omnibus clause, however, we think that the limitation `unless committed by or at the direction of the insured' refers only to the named insured. To otherwise hold would be to render this clause completely ineffective, an end surely not intended by the parties thereto."
The defendant insurer first attempts to distinguish the Barringer case on the grounds that the named insured there was an individual who could have personally committed or directed the assault and battery. Whereas, in the instant case, the named insured is a corporation not capable in itself of committing assault and battery.
This argument has no merit. In this case, like the Barringer case, it was not the named insured but an omnibus insured who assaulted plaintiff. It doesn't matter whether the named insured was a corporation or an individual, the named insured is still legally responsible for the torts of its agents or employees in the course of employment. To exclude assaults committed by or at the direction of an employee would mean that the named insured would be left without any coverage for such acts *402 by its employees. Such an interpretation would defeat the very purpose for which the named insured purchased the insurance, i. e., to protect itself against such wrongful acts by its employees. The only assaults excluded are those committed by or at the direction of the named insured. The assault and battery in this case was committed by L. T. Brown individually, while acting as an agent or employee of the insured corporation and was not committed or directed to be committed by the corporation as such. We find support for this position in the Mississippi case of Western Casualty & Surety Co. v. Aponaugh Manufacturing Co., 5 Cir., 197 F.2d 673.
Defendant insurer next argues there is no coverage here because assault and battery cannot be termed an "accident" as to an injured plaintiff who was the aggressor. Defendant contends the Barringer case, supra, as well as Jernigan v. Allstate Insurance Co. (5th Cir.App.1959) 269 F.2d 353, and the Western Casualty & Surety Co. case, supra, involved situations where the injured plaintiff was not the aggressor and therefore the assault and battery could be termed "an accident" as to him. The short answer to this argument is that under the facts of the present matter, as hereinafter set forth, we do not find the injured plaintiff was the aggressor.
Turning to the merits, the facts show that L. T. Brown Contractor, Inc. was reconstructing and blacktopping a rural road in Sabine Parish. L. T. Brown was in charge of the construction work. Barricades and flagmen were being used to warn motorists not to drive on the portions of the road where blacktop hot mix had been recently poured and was still soft.
Mr. Brown and other defense witnesses testified that on the day in question plaintiff had driven his black and white Chevrolet along this highway three or four times, at a high rate of speed, ignoring the barricades and flagmen and causing damage to newly poured hot mix. Plaintiff denied that he had been on the road that day prior to the trip on which he was stopped and assaulted. Regardless of this contradictory testimony, the facts do show that late in the afternoon of the day in question plaintiff was driving on this road at a moderate rate of speed, of about 40 MPH, a short distance behind Mrs. J. D. Williams and her daughter, Mrs. Eli Ebarb, Jr., who were in another vehicle. When they reached the construction site, L. T. Brown thought that he recognized plaintiff as being the one who had previously caused the damage to the road. Brown got in his truck and overtook plaintiff, cut in front of him and stopped him. Brown then armed himself with a pistol from his truck. Brown says he put the pistol in his pocket. Plaintiff and his witnesses, Mrs. Williams and Mrs. Ebarb, who had stopped for a barricade a few feet ahead of plaintiff's vehicle, testified Brown held the pistol in his hand. Brown then went to plaintiff's automobile, opened the right front door and accused plaintiff of having damaged the new blacktop.
As the trial judge has pointed out, in a very able and well written opinion, the testimony as to what occurred from this point on is very much in conflict. Plaintiff and his witnesses, Mrs. Williams and Mrs. Ebarb, testified that Brown reached in the car and began to beat plaintiff on the head with the pistol; that then Brown pulled plaintiff out of the car and threw him to the ground and kicked him in the throat and struck plaintiff on the head with the pistol two or three more times. It is undisputed that plaintiff received lacerations of the head which required 34 stitches.
On the other hand, Brown, who is substantiated to some extent by other workers on the job who were some distance away and could not see the incident as well as plaintiff's witnesses, testified that when Brown opened the door of plaintiff's car and began to question him, plaintiff ran his hand in his pocket as if to pull a knife; that Brown then reached for plaintiff's arm to prevent his obtaining the knife (the facts actually show that plaintiff did not have *403 a knife or any other weapon) and then plaintiff kicked Brown on the chest with his right foot and knocked him out of the car back across the shoulder of the road. Brown says the pistol came out of his pocket as he fell and plaintiff jumped out of the car and grabbed the pistol whereupon Brown seized plaintiff's arm and twisted the weapon from plaintiff's hands. Brown testified plaintiff then attacked him several times and that he struck plaintiff over the head each time with the pistol in self-defense. After the altercation plaintiff got back in his car and drove away.
The above facts clearly show that an assault and battery was committed by Brown on the person of the plaintiff causing him serious personal injuries. Plaintiff is entitled to damages unless defendants have sustained their burden of proving one of the defenses urged.
The first defense urged is the "aggressor doctrine". Defendant cites Oubre v. Judice (3rd Cir.App.1962) 147 So.2d 745; Lamartiniere v. Gourney (3rd Cir.App.1962) 139 So.2d 808; Haydel v. Bullinger (4th Cir. App.1961) 128 So.2d 441 and several other Louisiana cases which state the general rule that a plaintiff cannot recover in an action for assault and battery if he was the aggressor who provoked the difficulty by conduct reasonably calculated to cause retaliation. The language in some of these cases is broad and, when taken out of context, might lead one to believe, as defendant here contends, that if plaintiff was the original aggressor he cannot recover civil damages even though he was the victim of excessive force by defendant.
However, we think the correct rule is as stated in Landry v. Gilger Drilling Co. (1st Cir.App.1957) 92 So.2d 482:
"The aggressor doctrine does not apply against the original aggressor insofar as excessive force, or force beyond what is reasonably required under the circumstances of the case, is used against his person, Oakes v. H. Weil Baking Co., 174 La. 770, 141 So. 456; Bacas v. Laswell, La.App. Orleans, 22 So.2d 591; Newman v. Southern Kraft Corporation, La.App. 2 Cir., 197 So. 197, cf. LSA-R.S. 14:19, Criminal Code, see Ford v. Williams, La.App. 1 Cir., 62 So.2d 838, 840;"
Defendants argue the trial judge found as a fact that plaintiff was the original aggressor. We do not so interpret the lower court's written reasons. The trial judge, correctly following the above quoted law from the Landry case, stated that even if we were to assume that Rivers provoked the affray by kicking Brown back out of the car onto the shoulder of the road, Brown then got control of the pistol and used excessive force in "beating Rivers over the head with the weapon." We think the preponderance of the credible evidence actually shows that Brown was the original aggressor, not Rivers. Admittedly it was Brown who first became angry; chased plaintiff and ran him off the road; then armed himself with a pistol; went to plaintiff's car; opened the door and accused plaintiff of damaging the road. Even as to the question of who struck the first blow, we think plaintiff's version is better corroborated by the witness and is more reasonable and credible under all of the circumstances. Defendants had the burden of proving plaintiff was the aggressor. Lamartiniere v. Gourney, 139 So.2d 808 (3rd Cir.App. 1962). They have failed to sustain this burden.
This brings us to the plea of self-defense. The general rule is that a person may use such force as is reasonably necessary to protect himself from bodily harm where he believes, or has reason to believe, from the circumstances that his person is in danger. Pearson v. Taylor, La.App., 116 So.2d 833; Landry v. Hill, La.App., 94 So.2d 308. The evidence fully supports the following finding of the trial judge on this issue:
"It is proper to note here that Rivers was unarmed. There is no evidence that he had a weapon of any kind. He *404 weighed only 125 lbs. and had only recently been discharged from a hospital after having undergone surgery. On the other hand, the defendant, L. T. Brown, was six feet tall, weighed 168 lbs, and was only forty-five years of age. It is obvious that Rivers was no match as an adversary for Mr. Brown in the physical combat where neither was armed. Let us assume that Rivers did kick Brown in such a manner that Brown dropped his pistol and Rivers secured possession of it. Brown, himself, testified that he grappled with Rivers, wrested the pistol from him, and it was then that he began beating Rivers over the head with the weapon. Under such circumstances, was Brown entitled to pistol whip Rivers to the extent that it took 34 sutures to close the lacerations in his scalp, when Rivers, a much slighter man, had no weapon whatever? It is my opinion that Mr. Brown used more force than was necessary in striking Rivers, a small man, the staggering blows with a '38 caliber police special pistol."
The next issue is the quantum of damages. Rivers suffered three lacerations in his scalp which required 34 stitches and resulted in scarring, but none of these scars were disfiguring because they were covered by hair. He had only recently been released from the Veterans Hospital where he had undergone a tracheotomy. The scar from this surgery was not completely healed and was still draining. Rivers was apparently either struck or kicked on the throat during the altercation and this aggravation of his neck condition required that he be hospitalized for five days. Dr. Murdock testified that after several months Rivers was still having trouble with his throat which the doctor stated "could have been" caused by the kick. The original trouble in his throat was large polyps in his larynx, together with inflamed tonsils, laryngitis, etc. which was treated at the Veterans Hospital.
The trial judge awarded $3,000 to plaintiff for physical injuries and residual disability, plus an additional award of $500 for pain and suffering, and the amount of $186 as medical expenses, making a total of $3,686. Counsel for plaintiff argues strenuously that a greater amount should be awarded for pain and suffering as well as for disability and that in view of the willful, wanton and unprovoked nature of the assault there should be no mitigation of damages.
Under all of the circumstances we do not think the trial judge has abused the great discretion given him as to the amount of damages.
For the reasons assigned the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.